**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND BROWN | : | |
| | : | |
| Appellant | : | No. 1752 EDA 2021 |

Appeal from the PCRA Order Entered June 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013921-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND BROWN | : | |
| | : | |
| Appellant | : | No. 1753 EDA 2021 |

Appeal from the PCRA Order Entered June 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013923-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND BROWN | : | |
| | : | |
| Appellant | : | No. 1754 EDA 2021 |

Appeal from the PCRA Order Entered June 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013924-2011

BEFORE:  STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED OCTOBER 16, 2023**

Raymond Brown appeals from the order denying without a hearing his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

Brown was convicted of multiple charges, including aggravated assault and simple assault, following a domestic dispute and police standoff. On direct appeal this Court cited the trial court's detailed summary of the pertinent facts as follows:

> In the late hours of March 21, 2011, Emmanuella Felix (age 26) (the victim) was watching television in bed in her mother's basement (where she resided at the time) while her two children, [her daughter, R.F.B., age 3, and her son, C.F.B., age 1½] were laying in their beds preparing to go to sleep. On that evening, [Brown], who was the victim's former long-term boyfriend and the father of [both children], called the victim because he wanted to see the children and put them to bed. Though the victim and [Brown] had separated in early 2011, the victim agreed to allow [Brown] to come over. Shortly thereafter, [Brown] went to the victim's home, entered the basement, and began to "get comfortable" by plugging his phone charger into the wall.
>
> The victim asked [Brown] what he was doing and [Brown] responded that the two needed to talk. When the victim responded there was nothing to talk about, [Brown] demanded the victim to take a ride in the car with him so they could talk. At that point [R.F.B.] came over to her mother and the victim responded that "she was not going anywhere." [Brown] became agitated and stated: "Well, we can either do this the hard way or we could do this the easy way." When the victim asked what [Brown] meant, [Brown] pulled out his loaded 9 mm Ruger pistol and pointed the gun at the victim's face. The victim then asked what [Brown] was going to do. In response, he threatened to kill her. [Brown] rambled about wanting to talk and then walked up to the victim, pointing the gun at her head. In doing so, [Brown's] gun contacted the right side of the victim's head.

- 2 -

The victim called [R.F.B.] over and held her because [R.F.B.] was scared and shaking. At that time, the victim—in disbelief that [Brown] was going to kill her—got up while holding [R.F.B.] to turn off the television and wake [C.F.B.] The victim tried to leave the basement with her children but [Brown] blocked the door and threatened her again, stating that "if [she] scream[ed], he's gonna kill everybody that was in the house."

After she put her daughter down, [Brown] began to tussle with the victim, causing her to fall to her knees. [Brown] walked up to the victim from behind, stood over the top of her back, and choked her with his arm around her neck. As [Brown] choked the victim, she told [R.F.B.] to run upstairs and get "grandma." [Brown's] choking was so intense that the victim gasped for air and felt like she was going to faint. [Brown] then warned her to "stop trying to fight it . . . You can't. You won't be able to get loose."

When [R.F.B.] ran upstairs, she knocked on the door of her uncle, Mr. David Felix. Terrified, [R.F.B.] said that "daddy's about to kill mommy." Mr. Felix went downstairs to help and, as he approached the basement, called out the victim's name. The victim told Mr. Felix "don't come because [Brown] has a gun" and [Brown] responded that the victim fell and needed help. As Mr. Felix walked down into the basement hallway and toward the victim's bedroom, it was pitch black. When he reached the victim's room, Mr. Felix flicked the lights on. Mr. Felix saw the victim lying on her back, with [Brown] directly above her and his knees pressing against the top of her waist. Immediately thereafter, [Brown] fired his gun multiple times. Mr. Felix ran from [Brown] and the victim screamed "No. He's about to kill my brother."

After Mr. Felix fled, [Brown] stood the victim up, continuing to strangle her neck. The victim's father and mother then came downstairs into the basement. As they entered the basement, they saw that [C.F.B.] was awake and crying. The victim's father asked [Brown] "what are you doing?" and the victim asked her mother to get [C.F.B.] Seeking [C.F.B.'s] safety, the victim implored [Brown] "don't, do anything. My mother is just gonna get [C.F.B.] and go. . . I'll go wherever you want to go . . . Just let them go." The victim's parents then retrieved [C.F.B.] and took him upstairs.

Once the victim's parents went upstairs, [Brown] pulled the victim into the basement bathroom, and closed the bathroom door. In shock, the victim sat down by the tub and begged [Brown] "Let's go for the ride. Let's go so we could talk." In response, [Brown] said "it was already too late." Still holding his gun and blocking the bathroom door, [Brown] told the victim "one of us is not gonna leave her alive." [Brown] later stated that he was also going to commit suicide.

*Commonwealth v. Brown*, 144 A.3d 206 (Pa. Super. 2016), non-precedential decision at 1-3.

After returning upstairs, the victim's father called 911, police responded, and called for backup after learning that Brown fired a gun. A SWAT team and hostage negotiators arrived. Ultimately, after almost two hours, Brown permitted the victim to leave the basement. Soon thereafter, Brown shot himself. The SWAT team entered the basement, but Brown refused to drop the gun and pointed it at the SWAT team. Brown then shot his gun one time and a SWAT team member returned fire. Thereafter, Brown was arrested, rendered emergency medical care, and transported to the hospital.

On May 8, 2014, a jury convicted Brown of multiple offenses for his conduct toward the victim, as well as two counts of endangering the welfare of the children, and possession of an instrument of crime. The jury acquitted Brown of all crimes against David Felix and the officers involved. On October 31, 2014, the trial court sentenced Brown to an aggregate term of ten years and three months to twenty and one-half years of imprisonment. The trial court denied Brown's post-sentence motions.

Brown appealed to this Court and raised several issues, including whether his simple assault conviction and aggravated assault conviction should have merged for sentencing purposes, sufficiency and weight challenges, and whether the trial court improperly applied the deadly weapon enhancement to Brown's possession of an instrument of crime conviction. *See Brown*, *supra*, non-precedential decision at 7-8.

On March 13, 2016, this Court affirmed Brown's convictions, after concluding that most of his claims had no merit. However, we agreed with Brown, that the Sentencing Code "forbids the application of the deadly weapon enhancement to" Brown's possession of an instrument of crime conviction. *Id.* at 21. We therefore vacated Brown's judgment of sentence and remanded the case for resentencing.

On January 27, 2017, the trial court reimposed the same sentence on all charges, except for the possession of an instrument of crime conviction. The court sentenced Brown to a consecutive three-year probationary term for that conviction.

On January 31, 2017, Brown filed a *pro se* PCRA petition. The PCRA court appointed counsel. On September 28, 2017, PCRA counsel filed an amended petition in which Brown raised a claim of ineffective assistance of trial counsel for failing to request certain jury instructions. On April 18, 2018, the Commonwealth filed a motion to dismiss. On April 27, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Brown's petition

without a hearing because it was meritless. Brown filed a *pro se* response. By order entered June 29, 2018, the PCRA court denied Brown's petition.

Although Brown filed a counseled appeal, it was quashed on December 18, 2019. **Commonwealth v. Brown**, 225 A.3d. 1167 (Pa. Super. 2019). On June 30, 2020, our Supreme Court denied Brown's petition for allowance of appeal. **Commonwealth v. Brown**, 236 A.3d 1055 (Pa. 2020).

Brown filed a second PCRA petition, and the court appointed current counsel. After several procedural missteps, the PCRA court reinstated Brown's PCRA appeal rights were ultimately reinstated. Brown and the PCRA court have complied with Pa.R.A.P. 1925,

Brown raises the following two issues on appeal:

1. Did the PCRA court err by finding that [Brown's] trial counsel was not ineffective for failing to ask for jury instructions on the different gradations of aggravated assault?

2. Did the PCRA court err by finding that same counsel not ineffective for failing to argue for merger[?]

Brown's Brief at 6.

This Court's standard of review for an order dismissing a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Webb**, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing **Commonwealth v. Barndt**, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. [*See* Pa.R.Crim.P. 909(B)(2).] To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted). Regarding a claim that counsel was ineffective:

> It is well-established that to succeed on a claim asserting the ineffective assistance of counsel, the petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. *Commonwealth v. Pierce*, 527 A.2d 973, 975–76 (Pa. 1987). If a petitioner fails to satisfy any of the three prongs of the ineffectiveness inquiry, his claim fails. *Commonwealth v. Brown*, 196 A.3d 130, 150–51 (Pa. 2018).

*Commonwealth v. Parrish*, 273 A.3d 989, 1003 n.11 (Pa. 2022) (citation formatting altered).

In his first issue, Brown asserts that trial counsel was ineffective because he "should have asked for an instruction on aggravated assault under section 2702(a)(4) 'attempts to cause or intentionally or knowingly causes bodily injury with a deadly weapon' concerning David Felix[.]" Brown's Brief at 7. He further argues that "trial counsel should have asked for a simple assault instruction under section 2701(a)(1) 'attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another' or section 2701(a)(3) 'attempts by physical menace to put another in fear of imminent serious bodily

injury for [the victim]." *Id.* According to Brown, the evidence produced at trial "fit such convictions." *See id.* (citations omitted). He also asserts that these instructions would not have confused or mislead the jury because they constituted lesser-included offenses. *Id.* at 8.

When reviewing a challenge to a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (citation omitted).

Here, the PCRA court found that his ineffectiveness claim, regarding the instructions he believes should have been given the jury, did not warrant post-conviction relief. The court explained:

> [Brown] first argues that trial counsel was ineffective for failing to request the correct jury instructions where the available evidence could have supported convictions of a lesser offense. [Brown] argues that the evidence presented by the Commonwealth, namely that [he] pointed a gun at [the victim], [Brown] made threats to kill [her] and [Brown] struck [the victim] with a firearm, could have supported a conviction of either simple assault or aggravated assault.
>
> [Brown] argues that if the jury had been instructed properly on the lesser charge of simple assault, rather than aggravated assault, the jury would have convicted [him] of that lesser charge. However, the evidence on the record overwhelmingly supports a jury finding that [Brown's] acts went beyond simple assault. For example, the record reflects that [Brown] choked [the victim], repeatedly threatened her life and the life of her children, and even held a gun to her head while threatening her. Thus, counsel did not lack any reasonable basis for not requesting alternative

jury instructions. Furthermore, [Brown] has failed to show any prejudice. Where the evidence on the record so strongly supports a finding of aggravated assault, it is unlikely that if [Brown's] trial counsel had requested the correct jury instructions, a jury would have reached a conclusion more favorable to [him]. Therefore, as [Brown] has failed to demonstrate that (i) counsel did not have a reasonable basis for failing to request alternative jury instructions, and (ii) this failure to act resulted in prejudice, [trial] counsel was not ineffective.

PCRA Court's Supplemental Opinion, 10/4/22, at 3-4 (citations omitted).

Our review of the record supports the PCRA court's conclusions. Indeed, as this Court stated in rejecting Brown's sufficiency claim on direct appeal, "We have no hesitation in concluding that [Brown's] actions illustrated his intent to cause serious bodily injury [to Emmanuella]." **Brown**, non-precedential decision at 10.

As to Brown's arguments in his brief, initially we note that Brown did not challenge trial counsel's ineffectiveness for failing to request a simple assault instruction in his statement of issues. It is therefore waived. **See** Pa.R.A.P. 2116(a) (providing, "[n]o question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby"). Moreover, Brown tailors his argument concerning the failure to give the identified aggravated assault instruction to David Felix. However, the jury acquitted Brown of all charges related to him. Finally, we have reviewed the trial court's entire jury trial charge and conclude it fully comported with the evidence and applicable law. **Roser**, **supra**. Importantly, the trial court charged on both aggravated assault and simple assault as to the victim. **See** N.T., 4/30/16, at 29-31, and 40-42.

In his second issue, Brown claims that trial counsel was ineffective for failing to argue merger. In his brief, Brown presents no argument on this claim. Thus, it is waived. **See generally**, **Commonwealth v. Bolick**, 69 A.3d 1267 (Pa. Super. 2013).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2023